UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SAM CASE,

                          Plaintiff,

                                                               9:10-CV-0888
v.                                                              (NAM/TWD)

JOSEPH T. SMITH, J. STEFANIK,
CUTLER, CANE, KEYS, AUBE,

                          Defendants.
_____

APPEARANCES:                                                  OF COUNSEL:

SAM CASE, 09-B-2295
Plaintiff *pro se*
Clinton Correctional Facility
P.O. Box 2002
Dannemora, New York 12929

HON. ERIC T. SCHNEIDERMAN                      DAVID L. COCHRAN, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, New York 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION

      This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Norman A. Mordue, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff Sam Case claims that Defendants failed to protect him from a sexual assault by another inmate or provide him with medical care thereafter.  Currently pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Dkt. No. 43.)

For the reasons discussed below, I recommend that Defendants' motion be denied.

I.       **FACTUAL AND PROCEDURAL SUMMARY**

In his verified complaint, Plaintiff alleges that an AIDS-infected inmate with a history of sexually assaulting other inmates forced him to perform oral sex on that inmate on several occasions between February 2, 2010 and March 8, 2010.[1] (Dkt. No. 1 at 3.) Plaintiff alleges that he "informed officers . . . and they did nothing for me. I also put grievances in and they didn't answer them. They also never gave me the proper medical treatment." *Id*. On March 8, 2010 Plaintiff signed out of the Sexual Offender Treatment Program because Defendants "would not protect me from the threats and assaults." *Id*.

Plaintiff alleges that he filed a grievance at Shawangunk Correctional Facility, where the alleged assaults occurred. *Id*. at 4. He alleges that the grievance was ignored. *Id*. Plaintiff alleges that, in an effort to appeal the lack of response, he wrote to the Commissioner of the New York Department of Corrections and Community Supervision ("DOCCS"), the superintendent of Shawangunk, and the grievance officer. *Id*. Plaintiff also states[2] that an Inmate Grievance Resolution Committee member told him that sexual assaults are not grievable issues. (Dkt. No. 49 at 5.[3]) The supervisor of the committee "would not allow assistance of grievance procedure

---

[1] Elsewhere in his complaint, Plaintiff states that "the events giving rise to" his claim occurred at 1:00 p.m. on March 14, 2010. (Dkt. No. 1 at 2.) The reason for this discrepancy is not clear from the complaint or any of the other evidence currently before the Court.

[2] Plaintiff's opposition to the motion for summary judgment, in which he makes this assertion, was not signed under penalty of perjury.

[3] Page numbers in citations to Plaintiff's opposition to the motion for summary judgment refer to the page numbers assigned by the Court's electronic filing system.

2

from the inmate representative." *Id*. A few days later, Plaintiff was transferred to the main Clinton Correctional Facility. *Id*. at 6. Upon his arrival, Plaintiff tried unsuccessfully to access the law library. *Id*. Three weeks later, Plaintiff was transferred to the Clinton Correctional Facility Annex. *Id*. There, he "received assistance and was told there was no remedies available." *Id.*

Defendants now move for summary judgement, arguing that Plaintiff failed to exhaust his administrative remedies. (Dkt. No. 43.) Plaintiff has opposed the motion. (Dkt. No. 49.) Defendants have filed a reply. (Dkt. No. 53.)

## II. LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin*, 467 F.3d at 272-73. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248

(1986).  In determining whether a genuine issue of material[4] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

### III.    ANALYSIS

Defendants argue that this action should be dismissed because Plaintiff failed to exhaust his administrative remedies.  (Dkt. No. 43-7 at 3-6.[5])  I find that there is a triable issue of fact as to whether Plaintiff's failure to exhaust was the result of circumstances that might understandably lead an uncounselled prisoner to fail to grieve in the normally required way.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).  In New York state prisons,  DOCCS has a well-established three-step inmate grievance program.  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.7 (2010).

---

[4]     A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

[5]     Page numbers in citations to Defendants' memorandum of law refer to the page numbers in the original document.

Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a) (2010). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* at (b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, and issues a written decision within two working days of the conclusion of the hearing. *Id.* at (b)(2).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. Grievances regarding DOCCS-wide policy issues are forwarded directly to the Central Office Review Committee ("CORC") for a decision under the process applicable to the third step. *Id.* at (c).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* at (d).

Any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g) (2010).

If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford v. Ngo*,

5

548 U.S. 81 (2006).

Here, Plaintiff failed to exhaust his administrative remedies. Jeffery Hale, DOCCS Assistant Director of Inmate Grievance, declares that Plaintiff has appealed only one issue to CORC. (Dkt. No. 43-3 ¶ 4.) In that grievance, Plaintiff complained that he had fallen on a wet floor at Clinton Correctional Facility on July 1, 2010. *Id*. That grievance did not include any of the events described in this action. Thus, because Plaintiff failed to receive a decision from CORC regarding the incidents he complains of in this action, he failed to exhaust his administrative remedies.

Plaintiff's failure to exhaust, however, does not end the inquiry. The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies. *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).[6]

First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Id*. at 686 (citation omitted). Here, as discussed above, administrative remedies were available to Plaintiff.

Second, if an administrative remedy was available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether *the defendants' own actions* inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the

---

[6] The Second Circuit has not yet decided whether the *Hemphill* rule survived the Supreme Court's decision in *Woodford*, 548 U.S. 81. *Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011) ("Subsequent decisions have questioned the continued viability of this framework following the Supreme Court's decision in *Woodford* . . . We have questioned whether, in light of *Woodford*, the doctrines of estoppel and special circumstances survived . . . We . . . decline to reach the issue.").

6

plaintiff's failure to exhaust as a defense." *Id.* (citations omitted) (emphasis added). Here, Defendants preserved the exhaustion defense by asserting it in their answer. (Dkt. No. 27 ¶ 13.) Moreover, nothing in the record before the Court indicates that any of the named Defendants inhibited Plaintiff from exhausting his administrative remedies. Plaintiff asserts that his grievance was ignored, that an IGRC member told him that sexual assaults are not grievable issues, and that the supervisor of the committee "would not allow assistance of grievance procedure from the inmate representative." (Dkt. No. 49 at 5.) However, none of these allegations implicate any of the named Defendants.

Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Hemphill*, 380 F.3d at 686 (citations and internal quotations omitted). Justification "must be determined by looking at the circumstances which might understandably lead . . . uncounselled prisoners to fail to grieve in the normally required way." *Giano v. Good*, 380 F.3d 670, 678 (2d Cir. 2004). Here, such special circumstances have been plausibly alleged. Plaintiff asserts that he is illiterate (Dkt. No. 49 at 7), that he filed a grievance that was ignored (Dkt. No. 1 at 4), that a member of the IGRC told him that his complaint was not grievable (Dkt. No. 49 at 5), that he was refused assistance (*Id.*), and that he was transferred to another facility where he could not access the law library (*Id*. at 6). These circumstances might understandably lead an uncounselled prisoner to fail to grieve in the

7

normally required way.[7] Therefore, I recommend that the Court deny Defendants' motion for summary judgment.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 43) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: April 23, 2012
       Syracuse, New York

*[signature]*
Therèse Wiley Dancks
United States Magistrate Judge

---

[7] Defendants note that Plaintiff "was able to file a grievance at Clinton Correctional Facility, dated July 19, 2010, concerning an unrelated matter and appeal that grievance all the way to CORC." (Dkt. No. 53 at 3.) That fact is irrelevant because Plaintiff filed this action a month earlier, in June 2010. (Dkt. No. 4 at 1 n.1.)